I'm sorry I'll go ahead and call the next case, but we're going to take a five-minute break. So counsel for Mr. Nikoshchenkov and the Attorney General can come forward and we'll be back in five minutes Good morning. Good morning, Your Honor. Sorry about that. Oh, no, we didn't take our full time. So we're glad to see you. May it please the Court, if I may, Victor Okike for the petitioner, Mr. Nikoshchenkov. Your Honor, I'd like to begin with answering the questions that the Court had posed, three questions with regards to the Pereira issue. Your Honor, the first question I would like to answer affirmatively by saying that that language does not contain any ambiguity. And as a result, Your Honor, it is my submission that that section does apply to removal proceedings, does apply in removal proceedings. And then the second issue also, the second question, whether in light of Pereira, whether a notice to appear must contain the time and place at which proceedings will be held. Your Honor, I also want to answer that question in the affirmative, as the Supreme Court itself had answered in Pereira. And then the third question, Your Honor, which I think is actually the crux of the matter here, which is the question whether the Pereira issue is jurisdictional or whether it's a claim processing rule. I'd like to begin by saying that it is a jurisdictional issue, and I say that because, first of all, Your Honor, if we look at the history of that section, reading the Seventh Circuit decision that just came out, the history of that section in 1995 or 1994, under the statute at that time, the similar provision of the law had the word otherwise in the order to show cause. In other words, it provided that the time and date and place of hearing should be in the order to show cause or otherwise. So Congress at that time included the word otherwise to mean that that particular information may not necessarily be in the order to show cause, and the order to show cause is the predecessor to the NTA. So when the law was—when Congress passed the new law in 1996, the IRA-IRA, they took away the word otherwise. It disappeared. The Seventh Circuit did not go into detail in trying to dig out why that happened. But, Your Honor, it is my contention that the reason why that happened is because Congress wanted to make sure, wanted to make absolutely certain that the time and the place where the proceedings will be held would be mandatorily put in the NTA and not in any other secondary document, not in any other document that will come later, not in a notice of hearing from EOIR, but in the NTA. That's my first reason for saying that it's jurisdictional, Your Honor. My second reason for saying that it's jurisdictional, Your Honor, is the fact that, as the Supreme Court said in Pereira, it is definitional. You know, the government raised that issue, and the Court was firm on that, that 239A or 1229A is a definitional provision of the law. And my third reason for saying that it is jurisdictional, Your Honor, is if the Court looks at the analysis of this—the Eleventh Circuit in Alvear-Santoro, the case which the Court had listed in the question, and the process through which the Court arrived at the fact that the 90-day deadline for motions to reopen, that that rule is a claim-processing rule—if the Court applies that to this particular issue, the Court will see so many differences. For instance, in the 90-day rule, there were — there are exceptions inside the statute. There is the Batard's House exception to the 90-day rule. There is the exception to in absentia orders, for which, if you had no notice, you can actually bring at any time. There is also the 180-day exception for exceptional circumstances, and not even talking about the regulation, which contained even more exceptions. But just sticking with the statute, it contained these exceptions, but the statute in this case contains zero exception with regards to this provision, saying that the NTA must contain this information from A through — all the way through G, I believe, that they must contain this information. There is no exception anywhere. And, in fact, if you take it further, in the regulations, there is no exception. The where practicable language that exists in 1003.18 is ultra-various. That particular section was actually also referred to the Supreme Court in Pereira, and the Court made nothing of it. So, Your Honor, for these reasons, it is my submission that this particular provision, 1229A, is jurisdictional. I know that the big issue, the big problem that all the circuits have encountered is, okay, if it is jurisdictional, then what happens to all the cases passed? Does it mean that all the cases passed? Does it mean that they are all void? I've never been much for the floodgates arguments. I mean, I think judges are just supposed to read the statute and do what it says. May I ask you a procedural question about your case? It's my understanding that Mr. Nikoshenkov, his spouse, filed an I-130. What is the status of that? Is that still pending? The USCIS denied it, but an appeal is pending. Okay. All right. That's helpful. And I don't know how you plan to use your time, but, you know, we spend a lot of time applying the categorical approach to the state criminal statutes. And this first-degree forgery statute, I have found a case where somebody was prosecuted under that statute for a false endorsement, meaning that, you know, they had authority to sign the document, but they used it for an unauthorized, they used the valid document for an unauthorized purpose. Does that make the Georgia forgery statute overbroad in the categorical analysis? Absolutely, Your Honor. Absolutely. The Georgia code is way overbroad. Applying the categorical analysis, Your Honor, which, in a line of Supreme Court cases, actually, that is the only analysis that is relevant before the courts. Applying that analysis, that section of the INA vis-a-vis the Georgia code, the conviction of the petitioner in this case is not categorically an aggravated felony because it is overbroad. And, Your Honor, if I may go back a little bit to the, just to the Pereira issue to round up on that. Yes, of course. Yes. So if the court is minded to conclude that it is a claim processing rule, I would like to submit, Your Honor, that the petitioner in this case is also deserving in that regards. Because as of the time that his proceedings began in 2017, in this circuit, in the 11th circuit, the law was reasonably settled on the matter of Camarillo from the BIA that an NTA that does not have time and notice and all that is okay. It can trigger the stop-time rule. It can — it's fine. So even though the petitioner refused to sign his NTA, but notwithstanding, there was no need for him to — there was no need for him to file a motion to terminate at that time. It would have been meritless. It would have — perhaps he could have been frivolous at that point in time considering what the law was in this circuit. But if we determined that it was a claims processing rule, why wouldn't we just send it back and have BIA determine in the first instance whether there was a problem here as far as claims processing goes or whether, you know, he had reason? You know what I'm saying? Yes, Your Honor. I agree with what Your Honor is saying. If the court finds that it is a claims processing rule, the petitioner is also deserving of a remand in that case. And with further instructions to the BIA to consider, you know, the timing, because what I'm saying in effect is that equitable tolling should apply to him favorably if it is a claims processing rule. Because he acted as quickly as he could. The law in the Eleventh was settled. There was no need for him to really do anything at that — at the immigration court level. And he acted as quickly as he could once there was a change, which is a little bit different from the — from the petitioner in the Seventh Circuit, where the court found that that petitioner did not act in a timely way. But the law in the Seventh Circuit was — was — was different because they had Dababna and they also had — there was the other case that they had. And both of those cases in the Eleventh — I mean in the Seventh clearly said that an NTA without those — that kind of information, the time and place, would — would not trigger — would not trigger the stop-time rule. So he ought to have maybe done something earlier on, unlike the — the petitioner in this case in the Eleventh Circuit. Thank you. Thank you, Your Honor. Are you done? Do I still have time? You've saved some time for rebuttal. Thank you, Your Honor. Thank you. Good morning. Good morning, Your Honors. Lisa S. Morris here for the Office of Immigration Litigation, please. Your Honors, the government would like to begin by addressing the court's letter of July 11th. But on the other hand, it has been extensively discussed in the previous argument, and this has been consolidated. If you've got wisdom to offer, we'd love to have it. I would just like to clarify one thing regarding the last comment by the Petitioner's Counsel in the other case, where he said that somehow the government had conceded unambiguous — unambiguity, excuse me. What we stated that the statute was unambiguous for was that it did not mention jurisdiction. And therefore, under the Attorney General's authority, one turns to the regulations for jurisdiction. I mean, you're right. We have kind of been through this. But, I mean, the Supreme Court's told us that in order to vest jurisdiction, a statute doesn't say, this statute vests jurisdiction. You know, you look to whether it gives authority here to the immigration judge to decide the case, which clearly it does. I'm sorry, Your Honor. Well, here, the salient point here is that the statute, as my colleague correctly pointed out, was the statute doesn't mention jurisdiction at all. One of the questions that Your Honors asked was about the authorities of immigration. But, you know, when I ask a question that says the Supreme Court has said the statute doesn't mean to — doesn't require, doesn't have to have expressly referenced jurisdiction, and your answer is, but the statute doesn't expressly reference jurisdiction, that's not getting it at the question I was asking. Well, I believe that all of the other circuits that have looked at this issue, of course, except for the Seventh Circuit, have explicitly found that sub salientio, you can't find jurisdiction in that statute if it doesn't mention jurisdiction. So what that statute mentions, as my colleague mentioned, was notice. The Third Circuit in Okomo actually sort of mentioned the point of Judge Rosenbaum, and I think yourself as well, which was it does — it does seem to refer to initiation of proceedings. However, as the Third Circuit said in Okomo, quoting Carinthi, there's no glue to bind 1229A and the jurisdictional regulations. So as Congress — I'm sorry. Can I ask you a question about that? Because that's what's troubling me. I don't see how we get to the regulations, because the glue that is discussed in Pereira, it seems to me, appears on the face of the statutes. And so specifically, I'm talking about how 1229 paren a says in removal proceedings under 1229A and then defines notice to appear. So it seems to me that unambiguously, the definition of notice to appear that appears in 1229 paren a applies to removal proceedings under 1229A. So that's the first question. Do you agree or disagree with that? And if you disagree, why? And the second question is — I'm sorry. That's okay. Go ahead. You can answer that one. I'll ask you the second question. I would disagree with that, Your Honor. And why? And it's a several-part answer, so give me a little bit of leeway here. So in the Coma v. Attorney General, they did point out if Congress would have placed 1229A1's requirement in 1229A, the section establishing the IJ's authority, if it meant them to limit the IJ's subject matter jurisdiction. And the second part of this is that — Okay, but I'm not asking about — I'm not asking — that's the question we get to afterwards. We have to figure out what it all means afterwards. I'm asking you sort of a predecessor question, which is, does the definition of notice to appear that appears in 1229 paren a unambiguously apply to removal proceedings under 1229A per the language of 1229 paren a? It refers to that statute. Like, it refers to — for example, it refers to the stop time rule, which is what paren a was the subject matter of paren a. It would refer to an abstention proceedings, which is also in that particular section. So it refers to — I mean, the statute itself specifically says that it is referring to — it says written notice in this section referred to as notice to appear. So it's specifically referring to references in that statute to — that may refer back to 1229A. It doesn't expand beyond that to the Court's jurisdiction. I — right, different question. So you would agree with me, then, that unambiguously, per the language of 1229 paren a, the definition of notice to appear by the terms of 1229 paren a governs removal proceedings under 1229A? As it refers back to exactly in that statute, yes. Okay. Next question. If that's the case, then, as the Supreme Court has construed notice to appear as it appears in 1229 paren a in Pereira, right, is there any ambiguity left about — I mean, don't — aren't we required then to construe notice to appear in 1229 paren a as requiring inclusion of time and place? Or is there some reason why Pereira doesn't include that when it seems on its face that it does? You know, as my colleague argued previously, Pereira was very limited to the question of the stop time rule as it's referred to in 1229A. So there's no dispute about that, but it has a very limited application to the reference in the statute. So it could — well, it does refer to the stop time rule there, and it does refer — it might also refer to other things that are referred to under 1229A, such as an absentia proceedings or other things that refer back to 1229A. However, as my colleague pointed out, it doesn't refer to jurisdiction. Okay, so that brings me to the next question, which is, how do we get to the regulation? Why wouldn't we just look at 1229 paren a, 1229A, the statutory framework to determine what jurisdiction is, and for purposes of the notice to appear, why wouldn't we look to that to see whether it might be a claims processing rule and look more generally to the statutory framework as a whole for jurisdiction? Your Honor, that question has a lot of different parts. I'm sorry. But I'll try to answer it the best way I can. Thank you. So, again, the statutory limitations are 1229A. It says a written notice in the section referred to as a notice to appear. So, as my colleague argued in her brief, we then say, where does jurisdiction come in? And jurisdiction comes in under Section 1103G1 that gives the Attorney General such authorities and functions as this chapter and all other laws relating to immigration, naturalization of aliens, and says, under powers, the Attorney General shall establish such regulations as it's determined necessary to carry out this section. At that point, you turn to the regulations. And the regulations here specifically govern the immigration court's jurisdiction. At that point, you turn to 1003.13, .14, .15, and, of course, the all-important .18. And the point, 1003.18 specifically, and which, as I mentioned before, another number of other circuit courts have agreed, excuse me, 1003.18 specifically specifies that the service shall provide in the notice to appear the time, place, and date of the initial removal proceedings where practicable. And at that point — It seems at bottom the argument you're making is that because the statutory framework does not say specifically jurisdiction attaches at this particular point in the proceedings that the agency gets to determine when jurisdiction attaches. Is that the argument you're making? Yes. That seems problematic to me.  Let me tell you why so maybe you can — I'm sorry. That's okay. It seems problematic because it seems like Congress determines when jurisdiction attaches. You're saying the agency determines it. And I wonder if you could flesh that out for me. Your Honor seems to be getting to the Court's third question about claims processing versus the jurisdictional issue. So the government's first position — I'm sorry. Just to be clear, I don't know that you ever get to the regulation, right? What I'm saying is if jurisdiction is discernible from the statutory framework and we construe it from the statutory framework, and 1229 paren a necessarily — its definition of notice to appear necessarily applies to removal proceedings under 1229a, right, and Pereira says that the notice to appear definition in 1229 paren a requires inclusion of time and place, then I don't see how you get to the regulation. The only question at that point to me is whether notice — the notice to appear requirement that is in the statute is jurisdictional or claims processing. So — so that's where I'm coming from. To me, the disconnect is how does the — how does the agency get to determine when jurisdiction vests? Because it seems to me like Congress has to do that. Well, Your Honor — Am I making sense to you, what I'm trying to ask? I believe so. Okay. I think this goes almost to the question of deference that was addressed in my — in the — in the Respondent's brief, where we quote both Chevron, and I should say primarily — But under Chevron, we don't get to — we don't get to deference to the agency's position if the statutory language is clear. Well, Your Honor, again, and I think this is perhaps where we — where Your Honor and our position differ, is that we simply state that the statute is silent as to jurisdiction. Okay. So just to be clear, I'm not differing. I'm trying to figure out what the answer is here. And what I — what would help me really a lot is to figure out how the agency can dictate jurisdiction, because that's the part that I'm not getting. Well, Your Honor, excuse me. So, again, I would refer back to — excuse me. Let me just make sure I get it right. 1103G1, the power of the Attorney General to establish such regulations as the Attorney General determines to be necessary for carrying out this destruction. This — I'm sorry, this section. And, again, it does go to Chevron, because under Chevron, the power of the administrative agency to administer a congressionally created program necessarily requires the formulation of policy in the making of rules to fill any gap left implicitly or explicitly by Congress. But, again, let me ask it to you this way. Do you have any case law that stands for the proposition that an agency can determine its own jurisdiction? I believe Your Honor is getting to the claims processing rule again and to the question of jurisdiction. And regarding that — regarding that question, Your Honor cited Avila — I'm sorry. Let me just make sure I have the name right. Avila-Santos? Avila-Santoya. Excuse me. Avila-Santoya for the criteria regarding that. And, essentially, you said that — in Avila-Santoya, this Court said that it urged that rules should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity. And in that respect, I mean, the immigration judges here are taking jurisdiction over a case, as Judge Boggs pointed out earlier in the previous case, until the notice to appear is filed with the immigration court. I mean, the immigration court doesn't really do anything else. So, in that respect, it's jurisdictional. However, I would say that, you know, as I believe three courts have so far held, the Seventh Circuit, the Fourth Circuit, and the Fifth Circuit as an alternative stated that this could also be a claims processing rule. And in this — in that circumstances, in Avila-Santoya, you — But they're not talking about the regulation there, right? They're not talking about the statute. The statute is silent to jurisdiction. So that would seem to be a point against it being a jurisdictional rule. Let me ask it to you this way. Let's just assume for purposes of this question that we don't get to the regulation. Make your best argument for why the notice to appear definition in 1229 paren a is a claims processing rule as opposed to jurisdictional, if that's okay. Your Honor, I'm running out of time here. And I do want to — No. I've actually got some questions about the substance of the case. So please answer Judge Rosenbaum's question. And then I've got a couple, and I think Judge Boggs does as well. Regarding — I think as a claims processing, the regulations are considered They set out certain requirements for the notice to appear. I believe you — in Avila-Santoya, you said that the court looked at the plain language of the statute. Here, the statute is silent. Perversions placement within the overall statute, again, the statute is silent. And characteristics of the review scheme. Here, the — after getting over the initial immigration judges, taking over jurisdiction of the court, the other requirements are simply procedures that the immigration court has for filing. That would probably be the best argument for a notice to appear being a claims processing rule, which I believe that the Seventh Circuit, the Fourth Circuit, and the Fifth Circuit addressed in much more detail than I did very briefly. Your Honor, Judge Martin, I believe you were asking about the false endorsement question, and I did want to answer that, but I am over time. No, I want — I love your insights. So in our second brief, this case has been briefed fairly a number of times. The respondent cited the case of Williams versus the U.S. Attorney General. It involves the Georgia statute, oddly enough, in the Third Circuit. Yes, it involves the same statute. However, there were two points I wanted to make related to Williams, which I think will address the false endorsement question that you were talking about. Is it overbroad? That's my question. Because people are prosecuted under that statute. No, it's not, for two reasons. As we extensively argued in our brief, related to forgery has been defined extraordinarily broadly. So related to forgery, as this Court acknowledged in Martinez-Gonzalez, expands to not only — not only to what you would consider the traditional definition of forgery, but also Martinez-Gonzalez actually referred to the model penal code, and the model penal code actually contemplates something like false agency endorsement. It says something that is — excuse me, I'm going to — So this is where you've got a genuine document that is used for an unauthorized purpose. Yes. But where you've got a genuine document, that's not — Well, Williams actually specifically addressed that. In Williams, it specifically said that there they used the difference between logical connection and causal connection. But they said logical connection here is that it's no moment of that supposed additional essential element of the generic definition because it still inherently encompasses what people traditionally consider to be forgery. A genuine document. A genuine document that is being used or presented, uttered — For an unauthorized purpose. For false purposes. Let me ask you, speaking of Williams, the government argued to the Third Circuit that this statute is not divisible. Is that your position here as well? As we stated in our brief, our position is that it is not divisible, that the court can approach this as a categorical — Okay. Under the categorical approach. And we would keep that consistent. Your Honor, may I ask one question? When you're talking about the false agency endorsement case, were you talking about Warren v. State, which was the State case that was cited in Williams? I'm talking about Duenas Alvarez. The Supreme Court case? No. Because, you know, we looked at what's been prosecuted under the statute in the State of Georgia, and so that's — I'm sorry, I don't have the site for you. I'm sorry. I was just wondering because the other difference that I pointed out under Williams v. the current case is that the statute has changed. In Williams, they were talking about a check that had been falsely endorsed. However, the statute was — the statute in this particular case was amended, and so now it says any writing other than a check. Yes. It is a Supreme Court case. I'm sorry. Yes. I was — So — But — U.S. Supreme Court? Duenas — yes. Yes. So — So I'm — I'll teach you to ask me a question, right, because you're not going to get it going. My apologies, Your Honor. I was just trying to figure out which case that you were talking about, simply because one of the points that I was talking about in Williams in the second brief was that the difference between Williams talking about false agency endorsement and the current case is that there was a change in the Georgia statute. So in Williams, the question false agency endorsement arose because the — because at the time, the statute included the ability to write a check, a genuine document. However, the statute changed afterwards so that it said any writing other than a check. And to my knowledge — That was the statute he was convicted under. And that was the statute that he was convicted under, any writing other than a check. So the difference between Williams and this case is that to my knowledge — and I did my own check, but, I mean, I did try as thoroughly as I could to go through false agency endorsement. I did not find a case that involved false agency endorsement in this particular statute after the change in the statute. All right. So I've got your answer. You're taking the same position here as you did in Williams, that the statute's not divisible? Yes. Okay. Thank you. And I know Judge Boggs has been patiently waiting to ask you a question. Oh, I'm sorry. Let me go back to the question of the agency establishing its own jurisdiction. Yes, Your Honor. Is one way to — usually when we say that, it's like the scope of the jurisdiction. And in part, it seems to me that here it's a question about a timing of jurisdiction in that usually we're concerned that the government is trying to claim jurisdiction too early. And am I right in effect that now, by waiting until the second notice that has all the information, the government's saying, okay, we may have messed up in getting jurisdiction the first time, but now we legitimately have jurisdiction at this later point. Is that a fair way of looking at it? Well, Your Honor — The reason I press the thing about they don't do anything is that if you take — if you took a strong view that you got jurisdiction with the first notice, then you could go ahead and convict him or send him away, and he would never have notice. And so that's why I'm looking at it as a timing issue. Am I wrong there, or am I just too complicated for me? Well, Your Honor, as my counsel, my other counsel, the other Respondent's counsel in another case pointed out, this is a difference between notice and jurisdiction here. And the question of notice would come up with an idea of an absentia proceeding where people could bring up arguments like a due process issue or other defenses that might address Your Honor's concerns. However, here we're simply talking about the immigration court's jurisdiction. And in that process, a notice of a hearing is essentially curative of that because it provides that information. All right. That's sort of what I said, that we — the strong statement, the agency can't determine its own jurisdiction, that is, the immigration court can't decide to issue divorces just because it has a regulation. But here it's a timing question, not a substantive scope of jurisdiction question. Is that fair or not? I'm sorry, Your Honor. I thought I was trying to help you, but that is — it seems to me that the counter-argument, the one that says, you know, do justice though the heavens fall, says that the agency is trying to reach out and take too much jurisdiction by giving this defective notice. And I'm saying, isn't it the case that it's not how much jurisdiction they're trying to take, it's really when they take it? If that's wrong, then I'll try to follow the rest of your arguments. No. I'm simply — I'm not sure I understand the Court's question, but I think that — I mean, when we're going to the idea of the two-step process, the idea is that it does actually meet the statutory notice requirements because it doesn't say that you can't get the type of notice that Your Honor talks about in a two-step process, that you can get the notice to appear, sort of giving you your removal charges and some basics like that, but then a later notice can say something like the time and place. You know what? While Judge Boggs was asking a question, I thought of something else. We're going to get our money's worth out of you today. So I thought that there was a problem with the BIA ruling on November 29th, 2017, where the Board said Mr. Nikashenkoff has neither addressed his convictions, the forgery convictions, nor shown remorse and or rehabilitation in this regard. And that appears to me that they just didn't see or didn't consider his express statement of contrition where he talked about his conviction and says I really made a mistake, I've learned a lot from it, asking for forgiveness. So don't you have a reasoned consideration problem with that part of the BIA ruling? Your Honor, as we argued in our brief, the reasoned consideration, there's no evidence that the Board didn't consider that. I mean, the section, just to explain. How can they say he didn't do it? Well, to explain, the section, the actual motion to reopen mentions the convictions, but there's not really any expression of remorse there. The section that Mr. Opaque cites in his brief where he says that the Petitioner has expressed immense remorse and everything like that was an exhibit that specifically just addressed a waiver application that he planned to make if the I-130 was granted. It didn't actually refer back to the actual motion to reopen that was before the Board regarding the adjustment status. So is your argument that they didn't have to consider that statement? Is that your argument? Not that they didn't have to consider it, but that it was an ancillary consideration to the motion to reopen itself. Well, how can they consider it if they say it didn't exist? I wouldn't read the Board's decision like that. I don't think that the Board's decision— It says he didn't address the convictions. Well, he didn't address it in his motion to reopen or in his affidavit regarding, except to mention that he'd been convicted, in the affidavit supporting the motion to reopen. This later exhibit containing this affidavit— excuse me, I think I misspoke, just the motion to reopen. This later affidavit regarding his idea of his comments on remorse was simply an exhibit about a possible waiver in the future. So this is a document that he planned to file in some other proceedings? Yes, if the Form I-130 was granted. But the document was in the record. It was in the record, yes. Okay, thank you. Thanks. Your Honors, do you have any more questions?  We appreciate your help. Thank you very much, Your Honors. Thank you, Your Honor. If I may just mention one aspect of our case on the merits that I wasn't able to get to, and that is the vacation of the conviction of the petitioner. Because that's a part of our last petition for review, wherein we submitted that the vacation of his sentence is good for immigration purposes. Most humbly, I'm submitting that this Court should rely on Alem and Gonzalez, which is a presidential decision out of this circuit, whereby the Court held that if there is any doubt or any ambiguity as to whether a vacator was made for either rehabilitative purposes or was made for substantive purposes, the Court would look at the petition itself. And I am submitting that if this Court looks at the actual petition, which is in the record, the Court will see that the basis of the petition, the basis of the vacator, was because of the fact that the petitioner did not consent to the plea voluntarily. He had ineffective assistance. He did not know that the conviction would definitely lead to deportation. Your Honor, I also want to just finally talk about the issue of the motion to reopen and the fact that the BIA did not give us a reasoned consideration. The thing that we submitted, wherein the petitioner fully addressed his conviction and showed remorse and talked about how he has learned from his mistake, is part of the motion, it's part of the record. Your Honor, if I may humbly submit that when the government talks about that we didn't put it in the motion, the statement of counsel in the body of motion is not evidence. The evidence is the exhibits. All those exhibits that are attached to the motion, those are what constitute evidence. And those are the things that the Board ought to have looked at, perused, but it didn't. And they had that when they were in the November 29th. Yes. You know, when they said he never addressed these convictions nor showed remorse or rehabilitation. They had that. That was in the record. Yes, it was in the record. They had that. All right. They just did not, they just never considered it. And I think I will yield the rest of my time. All right. We'll just say you gave some to your colleague over there because we kept her so long. Thank you. I think we are now ready for the last case of the day.